UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-566-MOC

| | |
|---|---|
| **CHICAGO TITLE COMPANY, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **JPMORGAN CHASE BANK, N.A.,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss Plaintiff's Amended Complaint, filed by Defendant. (Doc. No. 58). Also pending is Defendant's motion to stay all discovery pending the resolution of Defendant's motion to dismiss Plaintiff's Amended Complaint. (Doc. No. 64).

**I.      BACKGROUND**

The following allegations are made in the Amended Complaint and are taken as true for the purposes of the pending motion to dismiss.

In 2022 Selwyn Fair, LLC ("Borrower") sought a refinance loan from SouthernFirst Bank ("SouthernFirst") in which part of the loan proceeds would be used to pay off a loan with Aegon Asset Management ("Aegon"). The closing was set to occur on September 29, 2022, and CTC was retained to act as the disbursing (escrow) agent in connection with this refinance. Before the closing, third parties associated with Comer Dersesn SA DE CV, LLC ("Comer") became aware of the pending closing and compromised the computers of one or more of the parties to the transaction (but not CTC). Shortly before the closing, Borrower's counsel provided CTC with what turned out to be fraudulent wiring instructions (the "Fraudulent Wire

1

Instructions"), which directed that the payoff due to Aegon be wired into an account maintained at Chase ending in 1283 (the "Fraudulent Account"). (Am. Compl., Doc. No. 57 ¶¶ 5–14). CTC, relying on the Fraudulent Wire Instructions, wired the Aegon payoff amount of $3,078,881.55 (the "Funds") from its trust account at Wells Fargo Bank, N.A. to Chase and Chase deposited the funds into the Fraudulent Account. (Id. ¶ 20).

On October 14, 2022, CTC discovered the wiring instructions were false and immediately began taking action to recover the Funds. (Id. ¶¶ 27–29). CTC's efforts to recover the funds included a recall of the wire and the initiation of this action. (Id. ¶ 29). Based on the information CTC obtained via the limited early discovery allowed in this action, CTC was able to trace a portion of the Funds to an account in the name of Comer at Wells Fargo Bank, N.A. (Doc. No. 34, 46). Following this, CTC, through its counsel, engaged in direct communications with Wells Fargo which led Wells Fargo to return $2,148,299.21 of the Funds to Chase on February 1, 2023. (Doc. No. 57 ¶ 72). Chase would not, however, return the $2,148,299.21 to CTC, and CTC was required to file a Motion to Enforce Preliminary Injunction, which Chase ultimately did not oppose. (Doc. No. 46, 49). The order granting the Motion to Enforce Preliminary Injunction was entered on March 27, 2023, (Doc. No. 53), following which Chase returned the $2,148,299.21 to CTC. Over $930,0000 of the Fraudulent Wire remains unrecovered.

On or about April 28, 2021, Comer opened the Fraudulent Account with Chase. For a substantial time before the receipt of the Fraudulent Wire, Chase knew of serious issues with, and had serious concerns about, the Fraudulent Account that had been opened by Comer. The limited records provided by Chase establish the following:

On August 4, 2022, Chase placed a SEMS-AML alert on the Fraudulent Account (AML is an abbreviation for anti-money laundering). This same alert also notes "19 alerts" in "LAD"

for this account. LAD stands for Loss Avoidance Database. Also on August 4, 2022, at 12:43:05 pm a note on the Fraudulent Account indicates "Manual Open" and Chase entered the following note on the Fraudulent Account "review complete" and added the comment:

**ACCOUNT(S) IDENTIFIED FOR CLOSURE BY CCB CLIENT ESCALATIONS TEAM, DO NOT PROVIDE THE CLIENT ANY INFORMATION. CASE #244607760**

On August 4, 2022, Chase wrote Comer regarding the Fraudulent Account, stating: "After careful consideration, we have decided to close your account because of your association with a Chase credit card, deposit or investment account that was previously closed." Consistent with Chase's comment noted above, Chase did not provide Comer with any information about the SEMS-AML alert or other alerts placed on the Fraudulent Account. Despite the referenced anti-money laundering alert, loss avoidance alerts and communication with Comer regarding closure of the account, Chase did not close the Fraudulent Account and continued to allow it to be operated. (Doc. No. 57 ¶¶ 31–38).

At some point before October 2, 2022 (and likely before September 29, 2022), Chase wrote Comer again and stated that it was going to close the Fraudulent Account on October 2, 2022 and decline any transactions. (Id. ¶ 39). October 2 was nearly 60 days after the noted August 4, 2022 anti-money laundering alert (and potentially numerous other alerts pre-dating the August 4th alert) was placed on the Fraudulent Account.

On September 29, 2022, CTC provided its bank, Wells Fargo, specific instructions for the wire payment order including: the amount of money to be wired, the account number of the intended beneficiary (account ending in 1238), and the name of the intended beneficiary, Wilton Re Services, Inc. – Aegon, not Comer. It is alleged that the wire order from CTC's bank to Chase likewise described the beneficiary inconsistently by name and number - more specifically, the

3

wire order properly identified the intended beneficiary by name (Wilton Re Services, Inc. – Aegon), but included an account number for the Fraudulent Account. (Id. ¶ 68). On September 29, 2022, the amount of the Fraudulent Wire, $3,078,881.55, was credited to the Fraudulent Account. (Id. ¶ 41).

Almost immediately, Comer began transferring, or attempting to transfer, money out of the Fraudulent Account. Between September 29, 2022, and September 30, 2022, with respect to the transfers, or attempted transfers, Chase conducted fraud reviews and manual reviews of the requests/Fraudulent Account. (Id. ¶ 42–49).

On October 2, 2022, an alert was entered by Chase into the records of the Fraudulent Account, which said:

> **ACCOUNT TO BE CLOSED BY CCB CLIENT ESCELATIONS TEAM. CLOSURE PROCESS TO BEGIN 10/2/2022. NO NEW ACCOUNTS CAN BE OPENED. BRANCH IS APPROVED TO CLOSE ACCOUNT AND DISBURSE FUNDS WITH NO NEED TO CALL TO VERIFY FUNDS. INFORMATION USED TO MAKE THIS DECISION IS STRICTLY CONFIDENTIAL AND WILL NOT BE SHARED. THE DECISION WILL NOT BE REVERSED. CASE #244607760.**

The case number for the entry on October 2, 2022, is the same as for the entry on August 4, 2022, indicating the decision to close the Fraudulent Account was made before September 29, 2022, and was made based upon information known to Chase before September 29, 2022. (Id. ¶¶ 50–52).

On or about October 3, 2022, a day after Chase had previously indicated the Fraudulent Account was to be closed, Chase received a wire request seeking a transfer of $500,000 from the Fraudulent Account to an account at Wells Fargo controlled by Comer. Chase began a fraud review of this requested wire transfer and ultimately, on October 3, 2022, a $500,000 wire to the Wells Fargo account controlled by Comer was debited from the Fraudulent Account. (Id. ¶¶ 39,

4

53–55).

Also on October 3, 2022, shortly after 2:00 pm, Chase again manually opened the Fraudulent Account and added even more alerts, including an alert stating: "Account restricted by Consumer Risk, to be followed by account closure in 10 business days." (Id. ¶ 56).

Between October 5, 2022, and October 11, 2022, Chase rejected at least six requests by Comer to have funds transferred out of the Fraudulent Account. (Id. ¶¶ 57–59). Despite numerous prior rejected requests for funds from the Fraudulent Account, Chase approved the release of the remainder of the funds in the Fraudulent Account by way of a check in the amount of $2,494,153.30 to Comer, which was issued on October 13, 2022, and mailed by Chase on October 18, 2022, to Comer (the "Cashier's Check"). On October 20, 2022, the Cashier's Check was deposited into the Wells Fargo bank account controlled by Comer. (Id. ¶¶ 57–63).

The limited documents provided by Chase about the Fraudulent Account reflect that it had negative information and serious concerns about the account from as early as August 4, 2022, and that Chase continued to have significant concerns about the Fraudulent Account and continued to investigate the Fraudulent Account until the account was drained of all money. The limited documents provided by Chase reflect that the Fraudulent Account had been flagged in connection with money laundering and was the subject of ongoing evaluations and investigations that included numerous "alerts," threats of closure, fraud reviews, and manual reviews. (Id. ¶¶ 37–65).

Despite requests from CTC, Chase has not produced additional information to CTC relating to the Fraudulent Account which would show more specifically what Chase knew and when it knew the information. (Id. ¶ 66).

Based on the above factual allegations, Plaintiff brings the following claims against

5

Defendant Chase: (1) a claim under N.C. GEN. STAT. § 25-4A-207, based on Plaintiff's allegations that Defendant allowed a wire order transfer, despite knowing that the name of the account holder did not match the account numbers; (2) a claim under N.C. GEN. STAT., Chapter 75, for an unfair trade practice; and (3) a claim seeking a constructive trust; and (4) a claim seeking enforcement of the Court's preliminary injunction order. Plaintiff has voluntarily dismissed the last two claims.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court

6

must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

Taking Plaintiff's allegations as true and are construing them in the light most favorable to Plaintiff, the Court will deny the motion to dismiss as to the claim arising under N.C. GEN. STAT. § 25-4A-207, based on Plaintiff's allegations that Defendant allowed a wire order transfer, despite knowing that the name of the account holder did not match the account numbers, and Plaintiff's claim against Defendant for an unfair trade practice arising out of Defendant's handling of the Comer account.[1] The standards for pleading claims under Iqbal and Twombly are extremely lenient. Here, Plaintiff has alleged sufficient facts to survive Defendants' motion to dismiss as to these two claims. The Court can revisit Plaintiff's claims on summary judgment after the parties have conducted discovery.

### IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is denied. Moreover,

---

[1] The Court recognizes and agrees with Defendant's argument that Plaintiff's Chapter 75 claim is preempted by Chapter 4A of the Uniform Commercial Code to the extent that Plaintiff's claim arises solely out of the fraudulent wire transfer. See Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A., No. 21-1893, 2022 WL 3334626, at *1 (4th Cir. Aug. 12, 2022). Plaintiff argues that the basis for the Chapter 75 claim is "not related to the wire transfer itself, but to the manner in which Chase allowed a fraudulent account to remain open for months after it was aware of serious issues with the account—all of which preceded the wire transfer." (Doc. No. 60 at 17). The Court is skeptical that, on summary judgment, Plaintiff can show harm that is independent of the fraudulent wire transfer. Nevertheless, the Court will reserve decision on the preemption issue until after the parties submit summary judgment motions.

7

because the Court is denying the motion to dismiss, Defendant's motion to stay discovery pending the resolution of its motion to dismiss Plaintiff's Amended Complaint is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss and Motion to Stay Discovery (Doc. Nos. 58, 64) are **DENIED**.

Signed: June 9, 2023

Max O. Cogburn Jr
United States District Judge